UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EDUCATION MANAGEMENT SERVICES, LLC, | § § § § § § § § § § § § | No. SA:15–CV–075–DAE |
| Plaintiff, | | |
| vs. | | |
| MICHAEL J. TRACEY, | | |
| Defendant. | | |

ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS

Before the Court is a Motion to Dismiss Plaintiff's Amended Complaint filed by Defendant Michael J. Tracey ("Defendant"). (Dkt. # 12.) On April 9, 2015, the Court heard oral argument on the Motion. Andrew J. Moon, Esq., and Nathaniel C. Corbett, Esq., appeared at the hearing on behalf of Plaintiff Education Management Systems, LLC ("Plaintiff" or "EMS"); Clint Alexander Corrie, Esq., appeared at the hearing on behalf of Defendant. After reviewing the Motion and the supporting and opposing memoranda, and considering the parties' arguments at the hearing, the Court **GRANTS IN PART** Defendant's Motion to Dismiss Plaintiff's Amended Complaint. (Dkt. # 12.)

BACKGROUND

Plaintiff is an affiliate company of Real Estate Training International, LLC d/b/a Armando Montelongo Seminars ("RETI") that provides RETI with

administrative and staffing services.  (Dkt. # 7 ¶ 9).  RETI offers various seminar and mentoring packages based on President Armando Montelongo's ("Montelongo") "house flipping" system (id. ¶ 10), and Plaintiff provides the majority of the sales and administrative staff for the seminar events.  (Id. ¶ 11.)  Between 2010 and 2014, Defendant contracted with Plaintiff to provide sales and consulting services to RETI and at RETI seminar events.  (Id. ¶ 12.)  In connection with this arrangement, Plaintiff and Defendant entered into four different Contractor Agreements.  (Id. ¶¶ 14–16; Exs. B–E.)  Specifically, the parties entered into two agreements on February 21, 2010 ("2010 Agreements," Dkt. # 9, Exs. B–C), a third agreement on December 28, 2012 ("2012 Agreement," Dkt. # 9, Ex. D), and a fourth agreement on February 14, 2014 ("2014 Agreement," Dkt. # 9, Ex. E).

        Plaintiff alleges that per the terms of those Agreements, any trade secrets Defendant helped to develop during the course of his employment with Plaintiff and RETI were considered work product and therefore the property of Plaintiff or its affiliates.  (Id. ¶ 25.)  Each Agreement contains a non-disclosure provision in which Defendant agreed not to disclose confidential information belonging to Plaintiff.  (Id. ¶ 26; Ex. B ¶ 2.3; Ex. C ¶ 2.3; Ex. D ¶ 2.3; Ex. E. ¶ 2.3.)  Plaintiff further alleges that between 2010 and 2014, Defendant "was essentially granted carte blanche access to [Plaintiff's and RETI's] Trade Secrets." (Id. ¶ 12.)  According to Plaintiff, those trade secrets include specific room

designs, presentation schedules, presentation materials, proprietary sales training information and manuals, diagrams to saleroom design, proprietary sales team opening and closing pitches and scripts, proprietary and unique business development strategies, teaching materials, customer and vendor lists, and student testimonials.  (Id. ¶¶ 17–24.)

On or about October 12, 2014, Defendant terminated the 2014 Agreement with Plaintiff.  (Id. ¶ 29.)  On the same day, RETI sent Defendant a certified letter reminding him of his obligations under the non-disclosure and confidentiality provisions of the Contractor Agreements.  (Id. ¶ 30.)  Plaintiff alleges that shortly after terminating the Agreement, Defendant began to work for Nick Vertucci and The Nick Vertucci Companies, Inc. (collectively, "Vertucci").  (Id. ¶ 31.)  Vertrucci owns and operates a real estate seminar company that directly competes with RETI.[1]  (Id. ¶ 32.)  According to Plaintiff, the trade secrets disclosed to Defendant during his time with RETI will allow Vertucci to mimic the proprietary sales process and techniques that give RETI and its affiliates a competitive advantage within the real estate seminar industry.  (Id. ¶ 33.)  Plaintiff alleges that Defendant has used and continues to use those trade secrets to enrich himself and Vertucci, that he provides consulting services to Vertucci similar to

---

[1] Plaintiff alleges that Vertucci formed his seminar business sometime around October 2013, when his relationship with RETI and its president, Armando Montelongo, soured.  (Dkt. # 9 ¶ 33.)  Plaintiff states that prior to forming his own company, Vertucci provided services to RETI as a contractor and a vendor.  (Id.)

those he provided for Plaintiff and RETI, and that Defendant has assisted and continues to assist Vertucci in employing the proprietary sales theories and mental strategies developed and confidentially disclosed to him during the course of his employment with Plaintiff and RETI.  (Id. ¶¶ 35–36.)

Moreover, Plaintiff claims that Defendant knew that he would terminate the 2014 Agreement before signing it, as he had already planned to work for Vertucci's rival company.  (Id. ¶ 38.)  In support of this allegation, Plaintiff makes three main assertions.  First, Plaintiff contends that Defendant and Siggi Ahrens ("Ahrens") are close family friends.  Plaintiff alleges that Ahrens is a former EMS contractor who now serves as an integral member of Vertucci's sales staff and management team.  (Id. ¶¶ 38–39.)  Second, Plaintiff contends that "due to the small number and closeness of RETI's seminar sales staff," it is impossible that Defendant would not have known that Vertucci planned to form his own seminar company.  In particular, Plaintiff alleges that Defendant was well acquainted with both Vertucci and Keith Yackey ("Yackey"), another former EMS contractor and Vertucci's business partner, and that due to Defendant's frequent contact and close relationship with the seminar sales teams, Defendant must have known about Vertucci's plans for a rival company.  (Id. ¶ 41.)  Third, Plaintiff alleges that when Defendant terminated his contract with EMS, he spoke with both Montelongo and RETI's Director of Seminars, Sara Gartner ("Gartner").  Plaintiff

contends that during these conversations, Defendant expressed concerns about his health and his finances but assured Montelongo and Gartner that his future plans did not include Vertucci's company.  Nevertheless, Plaintiff asserts that two months later, Defendant was present at the Vertucci company Christmas party, and shortly thereafter began traveling to work at Vertucci seminar events.  (Id. ¶ 42.) Plaintiff finally contends that Defendant continued to obtain access to Plaintiff and RETI's trade secrets after signing the 2014 Agreement by attending at least two more RETI training events after signing the Agreement and before terminating his contract.  (Id. ¶ 42.)

On February 23, 2015, Plaintiff filed its First Amended Complaint, which includes the following causes of action: three counts of breach of contract (one each for the 2010, 2012, and 2014 Agreements), one count of statutory trade secret misappropriation, and one count of common law fraud.  (Id. ¶¶ 44–73.)  On March 9, 2015, Defendant filed the instant Motion to Dismiss.  (Dkt. # 12.) Defendant argues that Plaintiff's Amended Complaint should be dismissed for lack of personal jurisdiction.  In the alternative, Defendant asks the Court to dismiss Counts 4 and 5 of the Amended Complaint for failure to state a claim upon which relief may be granted.  (Id.)  On March 24, 2015, Plaintiff filed a Response (Dkt. # 16), and on March 31, 2015, Defendant filed a Reply (Dkt. # 17).

LEGAL STANDARD

I.    Motion to Dismiss for Lack of Personal Jurisdiction

Rule 12(b)(2) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint where the court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). The plaintiff bears the burden of making a prima facie showing that personal jurisdiction is proper. Monkton Ins. Servs., Ltd. v. Ritter, 768 F.3d 429, 431 (5th Cir. 2014). When ruling on a Rule 12(b)(2) motion to dismiss, the court takes uncontroverted allegations in the plaintiffs' complaint as true. Johnston v. Multidata Sys. Intern. Corp., 523 F.3d 602, 609 (5th Cir. 2008). When a defendant disputes the factual basis for personal jurisdiction, the district court may consider evidence including "affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." Quick Techs., Inc. v. Sage Grp. PLC, 313 F.3d 338, 344 (5th Cir. 2002). Conflicts between facts contained in the parties' affidavits and other documentation must be resolved in the plaintiff's favor. Revell v. Lidov, 317 F.3d 467, 469 (5th Cir. 2002).

II.   Motion to Dismiss for Failure to State a Claim

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Review is limited to the contents of the

complaint and matters properly subject to judicial notice. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although "detailed factual allegations" are not necessary, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The statements in the complaint must be sufficiently detailed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Id.

## DISCUSSION

Defendant asks the Court to dismiss the Amended Complaint on two grounds. First, Defendant argues that he is not subject to personal jurisdiction in

the state of Texas. In the alternative, Defendant alleges that Plaintiff has failed to state a claim upon which relief may be granted as to Counts 4 and 5 of the Amended Complaint. (Dkt. # 12 at 1.)

I.      Motion to Dismiss for Lack of Personal Jurisdiction

Defendant first argues that Plaintiff's Complaint must be dismissed under Rule 12(b)(2) for lack of personal jurisdiction. A court may properly exercise personal jurisdiction over a nonresident defendant when (1) the defendant is subject to personal jurisdiction under the laws of the state in which the federal court sits; and (2) the exercise of jurisdiction comports with the Due Process Clause of the United States Constitution. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472–74 (1985). The Texas long-arm statute authorizes personal jurisdiction over nonresident defendants to the extent permissible under the federal Due Process Clause. Latshaw v. Johnston, 167 F.3d 208, 211 (5th Cir. 1999) (citing Tex. Civ. Prac. & Rem. Code § 17.041). "Exercising personal jurisdiction over a nonresident defendant is compatible with due process when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice." Panda Brandywine Corp. v. Potomac Elec. Power Co., 253 F.3d 865, 867 (5th Cir. 2001) (per curiam).

Plaintiff argues that the exercise of personal jurisdiction is proper in this case because Defendant was personally served with the summons and complaint in San Antonio, Texas.  (Dkt. # 16 at 5.)  As the Fifth Circuit has recognized, "[f]ederal courts may . . . always assume jurisdiction over a defendant in any action where there is personal, in-state service of process."  Luv N'care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 n.2 (5th Cir. 2006) (citing Burnham v. Superior Court, 495 U.S. 604 (1990)).  See also J. McIntyre Machinery, Ltd. v. Nicastro, 131 S. Ct. 2780, 2787 (2011) (noting that a person may submit to a state's authority through his presence within the state at the time the suit commences through service of process); Gatte v. Dohm, 574 F. App'x 327, 331 (5th Cir. 2014) ("Because [the defendant] was personally served with process while voluntarily present in [the forum state], personal jurisdiction was established as to her unless she was fraudulently induced to enter the state for the purpose of serving process.").  Here, Plaintiff alleges that Defendant was served with process in San Antonio, Texas on January 17, 2015.  (Dkt. # 9 ¶ 2.)  In support of its allegation, Plaintiff submits an affidavit of service showing that Defendant was personally served on that date in San Antonio.  (Id., Ex. A.)  Furthermore, Plaintiff claims that Defendant was present in San Antonio to work as a salesman at a Vetrucci seminar event, and thus that he was not fraudulently induced to enter Texas to be served with process.  (Dkt. # 3 ¶ 42; Dkt. # 16 at 4.)  Because

9

Defendant was personally served with process in Texas while voluntarily present in the state on business, the Court finds that the exercise of personal jurisdiction is proper.

Defendant argues that the fiduciary shield doctrine prevents the Court from exercising personal jurisdiction over him because he was served with process in Texas while on a business trip. (Dkt. # 17 at 8.) The fiduciary shield doctrine protects a corporate officer or employee from being subjected to general personal jurisdiction when all of the individual's contacts with Texas were made on behalf of his or her employer. Wright v. Sage Engineering, Inc., 137 S.W.3d 238, 250 (Tex. App. 2004). Defendant argues that because he was only present in Texas at Vertucci's behest, he cannot be subject to personal jurisdiction on the grounds that he was served with process while in San Antonio. (Dkt. # 17 at 8.) In this case, however, Defendant was not a corporate officer or employee of Vertucci at the time of service, but was in fact an independent contractor. (See Dkt. # 1-1 ("Tracey Decl.") ¶ 3.) Although defense counsel expressed his belief at oral argument that the fiduciary shield doctrine applies equally to independent contractors, the Court can find no authority to support this position. In fact, at least one other district court has held that the doctrine does not apply to independent contractors. See Wheel-Source, Inc. v. Gullekson, No. 3:12-Cv-1500-M, 2013 WL 944430, at *8 n.3 (N.D. Tex. Mar. 12, 2013).

Furthermore, the fiduciary shield doctrine "does not protect [an individual] from specific personal jurisdiction as to intentional torts of fraudulent acts for which he may be held individually liable." Wright, 137 S.W.3d at 250. Here, Plaintiff has sued Defendant in his personal capacity on intentional tort theories, and Defendant's presence in Texas at the time of service was directly related to Plaintiff's causes of action—Defendant was present in San Antonio to work at a Vertucci seminar event, and his working relationship with Vertucci forms the basis of Plaintiff's intentional tort causes of action. Thus, the Court finds that the fiduciary shield doctrine does not apply to protect Defendant from the exercise of personal jurisdiction, and that Defendant is amenable to the personal jurisdiction of this Court.

II.     Motion to Dismiss Counts 4 and 5 for Failure to State a Claim

In the alternative, Defendant argues that Counts 4 and 5 of Plaintiff's Amended Complaint must be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Count 4 of the Amended Complaint alleges a claim for misappropriation of trade secrets in violation of the Texas Uniform Trade Secrets Act ("TUTSA"), and Count 5 alleges a claim for common law fraud. (Dkt. # 9 ¶¶ 60, 70.) Because Plaintiff's allegations concerning fraud are relevant to both claims, the Court addresses Count 5 of the Amended Complaint first.

A. <u>Common Law Fraud</u>

In Count 5 of the Amended Complaint, Plaintiff alleges that Defendant committed common law fraud by fraudulently inducing Plaintiff to enter the 2014 Agreement. (Dkt. # 9 ¶ 70.) Specifically, Plaintiff claims that at the time he signed the 2014 Agreement, Defendant knew that he had no intention of upholding its confidentiality provisions, as he had already planned to begin working for Vetrucci. (<u>Id</u>.) Under Texas law, the elements of common law fraud are:

> (1) the defendant made a representation to the plaintiff; (2) the representation was material; (3) the representation was false; (4) when the defendant made the representation the defendant knew it was false or made the representation recklessly and without knowledge of its truth; (5) the defendant made the representation with the intent that the plaintiff act on it; (6) the plaintiff relied on the representation; and (7) the representation caused the plaintiff injury.

<u>Shandong Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter</u>, 607 F.3d 1029, 1032–33 (5th Cir. 2010) (citing <u>Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.</u>, 51 S.W.3d 573, 577 (Tex. 2001)). "As a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort. However, when one party enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud." <u>Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.</u>, 823 S.W.2d 591, 597 (Tex. 1992) (citations omitted). "A promise to act in the future constitutes fraud only when made with the intention, design and purpose

12

of deceiving—a promise made with no intention of performing the act." Lightsource Analytics, LLC v. Great Stuff, Inc., No. A-13-CV-931 LY, 2014 WL 798069, at *2 (W.D. Tex. Feb. 27, 2014) (citing Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986)).

        Fraud claims must meet the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, under which "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); City of Clinton v. Pilgrim's Pride Corp., 632 F.3d 148, 153 (5th Cir. 2010). What constitutes "particularity" necessarily depends on the unique facts of each case. Benchmark Elecs., Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir. 2003). "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Tel-Phonic Servs., Inc. v. TBS Int'l, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992) (internal quotation marks and citation omitted). Put otherwise, Rule 9(b) requires the "who, what, when where, and how" to be laid out. Benchmark, 343 F.3d at 724.

        Defendant argues that all of the allegations asserted in the Amended Complaint do not support a fraud claim because they are "nothing more than conclusory statements." (Dkt. # 12 at 14.) Specifically, Defendant argues that the facts supporting Plaintiff's claim that Defendant knew at the time he signed the

2014 Agreement that he would leave to work for Vertucci are "meritless" and do not constitute fraud. (Id.) As explained above, Plaintiff alleges that Defendant "knew at the time of entering into the 2014 Agreement that he was going to disclose to Vertucci and his agents/employees, to the detriment of [Plaintiff and its affiliates], the Trade Secrets disclosed to him." (Id.) In support of these allegations, Plaintiff alleges that Defendant was personal friends with one of Vertucci's associates; that Defendant knew Vertucci planned to start a rival company; and that Defendant told Montelongo upon terminating his contract that he did not plan to work for Vertucci, but appeared at Vertucci events only months later. (Id. ¶¶ 38–42.) Even accepting these facts as true, as the Court must at the motion to dismiss stage, they do not support a finding that Defendant entered into the 2014 Agreement with the intent to breach it. Instead, they merely support the assertion that Defendant knew Vertucci was planning to start a rival company and perhaps that he planned to join Vertucci before terminating his contract. However, Plaintiff has not identified any facts suggesting that Defendant decided to join Vertucci <u>before</u> signing the 2014 Agreement.

      As Texas courts have recognized,

> Cases in which a party was induced into signing a contract by a promise that the promisor had no intention of keeping at the time he made the promise are to be distinguished from situations in which a party has made a promise with an existent intent to fulfill its terms and who then changes his mind and refuses to perform; otherwise, every breach of contract would involve fraud.

14

Oliver v. Rogers, 976 S.W.2d 792, 804 (Tex. App. 1998). Because Plaintiff has not pled sufficient facts showing that Defendant entered the 2014 Agreement with the intent to breach it, the Court finds that Plaintiff's fraud claim must be dismissed.

  B. Misappropriation of Trade Secrets

    In Count 4 of the Amended Complaint, Plaintiff alleges that Defendant's actions constitute the misappropriation of trade secrets belonging to Plaintiff and its affiliates within the meaning of TUTSA, Section 134A.002 of the Texas Civil Practices and Remedies Code. (Dkt. # 9 ¶ 60.) Specifically, Plaintiff argues that Defendant violated TUTSA by acquiring trade secrets through improper means when he (1) breached the duty of non-disclosure imposed by each of the Contractor Agreements and (2) fraudulently entered the 2014 Agreement with the intent to terminate it and begin working for Vertucci. (Id. ¶¶ 62–63.) To establish a cause of action for trade secret misappropriation under Texas law, a plaintiff must show that: (1) a trade secret existed; (2) the defendant acquired the trade secret through "improper means"; and (3) the defendant disclosed the trade secret without the plaintiff's consent. Wellogix, Inc. v. Accenture, L.L.P, 716 F.3d 867, 874 (5th Cir. 2013); Tex. Civ. Prac. & Rem. Code § 134A.002.

    Defendant argues that Plaintiff's misappropriation of trade secrets claim must fail because it cannot establish that Defendant acquired the trade

secrets through "improper means." (Dkt. # 12 at 13.) Under TUTSA, "improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret, or espionage through electronic or other means." Tex. Civ. Prac. & Rem. Code § 134A.002(2). The Court has already determined that Plaintiff has not alleged sufficient facts showing that Defendant entered into the 2014 Agreement with the intent to breach it and disclose Plaintiff's trade secrets to Vertucci. Therefore, whether Plaintiff can maintain its misappropriation of trade secrets claim depends on whether it can establish its claim through Defendant's alleged breaches of the other Contractor Agreements.

Defendant argues that because Plaintiff willingly provided Defendant with the alleged trade secrets pursuant to the Contractor Agreements, Plaintiff cannot meet the "improper means" element and that its claim must fail. (Id.) In support of this position, Defendant points to a recent order issued by Judge Hudspeth denying Plaintiff's motion for reconsideration on a motion to dismiss filed by another defendant Plaintiff has sued on facts very similar to those in this case. (Id.) See Educ. Mgmt. Servs., LLC v. Cadero, No. 5:14-CV-587-HLH (W.D. Tex. Dec. 23, 2014) (order denying motion for reconsideration). In that order, Judge Hudspeth held that Plaintiff could not state a claim under TUTSA because it failed to allege that the defendant acquired knowledge of the trade

16

secrets by any improper means—instead, Plaintiff admitted that it willingly disclosed the secrets to the defendant during the course of his employment with Plaintiff and RETI. Id. at 2.

The plain language of § 134A.002(3)(B)(i) requires that a defendant "acquire" knowledge of the trade secrets at issue through "improper means." As Plaintiff points out, "improper means" includes "breach . . . of a duty to maintain secrecy." Id., § 134A.002(2). However, Plaintiff has not alleged that Defendant acquired the trade secrets through a breach of the Contractor Agreements. Rather, Plaintiff admits that it willingly disclosed trade secrets to Defendant pursuant to those Agreements. The fact that Defendant later allegedly breached the confidentiality provisions of the Agreements is irrelevant to the method by which he obtained access to the trade secrets in the first instance. Thus, under the plain language of TUTSA, Plaintiff has failed to state a claim for misappropriation of trade secrets.

Nevertheless, Plaintiff argues that Texas common law supports the proposition that Defendant's alleged breach of the confidentiality provisions constitutes "improper means" under TUTSA. (Dkt. # 16 at 18.) Plaintiff states that under Texas common law, a cause of action for trade secret misappropriation required a plaintiff to show "(a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper

secrets by any improper means—instead, Plaintiff admitted that it willingly disclosed the secrets to the defendant during the course of his employment with Plaintiff and RETI. Id. at 2.

The plain language of § 134A.002(3)(B)(i) requires that a defendant "acquire" knowledge of the trade secrets at issue through "improper means." As Plaintiff points out, "improper means" includes "breach . . . of a duty to maintain secrecy." Id., § 134A.002(2). However, Plaintiff has not alleged that Defendant acquired the trade secrets through a breach of the Contractor Agreements. Rather, Plaintiff admits that it willingly disclosed trade secrets to Defendant pursuant to those Agreements. The fact that Defendant later allegedly breached the confidentiality provisions of the Agreements is irrelevant to the method by which he obtained access to the trade secrets in the first instance. Thus, under the plain language of TUTSA, Plaintiff has failed to state a claim for misappropriation of trade secrets.

Nevertheless, Plaintiff argues that Texas common law supports the proposition that Defendant's alleged breach of the confidentiality provisions constitutes "improper means" under TUTSA. (Dkt. # 16 at 18.) Plaintiff states that under Texas common law, a cause of action for trade secret misappropriation required a plaintiff to show "(a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper

means; and (c) use of the trade secret without authorization from plaintiff." (Id., citing Wellogix, 716 F.3d at 874).  The Court notes two problems with Plaintiff's argument.  First, TUTSA specifically provides that it "displaces conflicting tort . . . law of this state providing civil remedies for misappropriation of a trade secret."  Tex. Civ. Prac. & Rem. Code § 134A.007.  Next, even if Texas common law does apply, Plaintiff's claim still suffers from the same issue—the Amended Complaint fails to allege that Defendant acquired the trade secrets at issue through improper means, as required by both TUTSA and the second element of the common law claim.  For that reason, Plaintiff's misappropriation of trade secrets claim must be dismissed.

## CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART** Defendant's Motion to Dismiss Plaintiff's Amended Complaint.  (Dkt. # 12.)  Counts 4 and 5 of Plaintiff's Amended Complaint are hereby **DISMISSED.**

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, April 9, 2015.

_____
David Alan Ezra
Senior United States Distict Judge

18