UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| EDUCATION MANAGEMENT SERVICES, LLC, | § § § § | No. SA:15–CV–075–DAE |
| Plaintiff, | § § | |
| vs. | § § | |
| MICHAEL J. TRACEY, | § § § | |
| Defendant. | § § | |

ORDER DENYING PLAINTIFF'S MOTION TO STAY LITIGATION AND
COMPEL ARBITRATION

Before the Court is a Motion to Stay Litigation and Compel Arbitration filed by Education Management Services, LLC ("Plaintiff"). (Dkt. # 23.) On June 30, 2015, the Court heard oral argument on the Motion. Henry B. Gonzalez, Esq., and Nathaniel C. Corbett, Esq., appeared at the hearing on behalf of Plaintiff; Clint A. Corrie, Esq., appeared at the hearing on behalf of Defendant Michael J. Tracey ("Defendant"). After reviewing the Motion and the opposing memorandum, and considering the parties' arguments at the hearing, for the reasons that follow, the Court **DENIES** Plaintiff's Motion to Stay Litigation and Compel Arbitration. (Dkt. # 23.)

1

BACKGROUND

Between 2010 and October 2014, Defendant provided various real estate seminar sales and consulting services to Plaintiff.  (Dkt. # 7 ¶ 11.)  In connection with this arrangement, Plaintiff and Defendant entered into four separate Contractor Agreements.  (Id. ¶¶ 14–16; Exs. B–E.)  Specifically, the parties entered into two agreements on February 21, 2010 (the "2010 Agreements," Dkt. # 7, Exs. B–C), a third agreement on December 28, 2012 (the "2012 Agreement," Dkt. # 7, Ex. D), and a fourth agreement on February 14, 2014 (the "2014 Agreement," Dkt. # 7, Ex. E) (collectively, "the Agreements").  Each of the Agreements contained the following provision:

> 4.1 Disputes Will be Arbitrated.  Any controversy between [Defendant] and [Plaintiff] and/or Affiliates, or any of its respective owners, employees, contractors, officers, agents, clients, subsidiaries, affiliates, arising from or in any way related to this Agreement, [Defendant's] business relationship with [Plaintiff] and/or Affiliates, shall be resolved exclusively by final and binding arbitration administered by the American Arbitration Association under its rules then applicable to the dispute.  Any arbitration shall take place only in San Antonio, Texas, or as otherwise mutually agreed by the Parties.

(Dkt. # 7, Exs. B–E.)  Both Plaintiff and Defendant signed each of the Agreements.  (Id.)

In October 2014, Defendant unilaterally terminated the 2014 Agreement.  (Dkt. # 7 ¶ 29.)  Plaintiff asserts that shortly thereafter, Defendant violated the Agreements by working for a direct competitor of one of Plaintiff's

affiliates, and by disclosing and using Plaintiff's and its affiliates' trade secrets and confidential information which Defendant obtained during his relationship with Plaintiff.  (Dkt. # 23 at 4.)

On January 16, 2015, Plaintiff filed its Original Petition and application for a Temporary Restraining Order ("TRO") in Bexar County District Court.  (Dkt. # 1–13.)  Plaintiff's Original Petition included four causes of action: (1) breach of contract for the 2010 Agreements, (2) breach of contract for the 2012 Agreement, (3) breach of contract for the 2014 Agreement, and (4) statutory trade secret misappropriation.  (Dkt. # 1–4.)  On January 29, 2015, Defendant filed its Notice of Removal, invoking this Court's diversity jurisdiction.  (Dkt. # 1.)  On February 9, 2015, Defendant filed a Motion to Dismiss the Original Petition.  (Dkt. # 3.)  Subsequently, Plaintiff amended its Complaint (Dkt. # 7) to include an additional cause of action for common law fraud.  (Dkt. # 7.)  On March 9, 2015, Defendant moved to dismiss the Amended Complaint.  (Dkt # 12.)  After holding a hearing on the motion to dismiss, the Court dismissed Plaintiff's statutory trade secret misappropriation and common law fraud claims without prejudice.  (Dkt. # 20.)  On May 20, 2015, Plaintiff filed the instant Motion asking the Court to stay litigation and compel this case to arbitration.  (Dkt. # 23.)  On May 27, 2015, Defendant filed a Response.  (Dkt. # 28.)

LEGAL STANDARD

A motion to stay litigation under § 3 of the Federal Arbitration Act ("FAA") "requests the district court to refrain from further action in a suit pending arbitration[.]" Midwest Mech. Contractors, Inc. v. Commonwealth Const. Co., 801 F.2d 748, 750 (5th Cir. 1986). To obtain a stay of litigation under § 3, a movant must show (1) that an agreement between the parties to arbitrate exists, and (2) that the issues raised are within the reach of that agreement. Complaint of Hornbeck Offshore (1984) Corp., 981 F.2d 752, 754 (5th Cir. 1993); Ryan v. Thunder Restorations, Inc., Civ. A. No. 09–3261, 2011 WL 2680482, at *1 (E.D. La. July 8, 2011).

In contrast, a motion to compel arbitration under § 4 of the FAA is a request that the court compel specific performance of an agreement to arbitrate, and may be made in any district court which has subject matter jurisdiction over the underlying dispute. Midwest Mech. Contractors, Inc., 801 F.2d at 750. In ruling on a motion to compel arbitration under § 4, a court must determine (1) whether the parties agreed to arbitrate the dispute, and if so, (2) whether any federal statue or policy renders the claims nonarbitrable. Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 214 (5th Cir. 2003) (citing R.M Perez & Assocs. v. Welch, 690 F.2d 534, 538 (5th Cir. 1992)). The first element, whether the parties agreed to arbitrate, involves two considerations: (1) whether a valid

agreement to arbitrate between the parties exists, and (2) whether the dispute in question falls within the scope of the arbitration agreement. Dealer Comp. Servs. v. Old Colony Motors, Inc., 588 F.3d 884, 886 (5th Cir. 2009).[1]  Beyond this analysis, courts generally do not inquire further into the substance of the parties' disputes. Id. at 886–87 (citing Will-Drill Res., Inc., 352 F.3d at 214).

The right to arbitrate, like all contractual rights, is subject to waiver. Miller Brewing Co. v. Fort Worth Distrib. Co. Inc., 781 F.2d 494, 497 (5th Cir. 1986).  A party waives its right to arbitrate when (1) that party has "substantially invoked the judicial process" and (2) that party's "steps towards litigation prejudiced the party opposing arbitration." Ryan, 2011 WL 2680482, at *2 (citing Republic Ins. Co. v. Paico Receivables, LLC., 383 F.3d 341, 346–47 (5th Cir. 2004)).  The legal standard for waiver is the same regardless of whether the plaintiff or defendant is the party alleged to have waived arbitration. Nicholas v. KBR, Inc., 565 F.3d 904, 908 (5th Cir. 2009).  "Differences between the two sides arise from the voluntariness and timing of their actions, not the legal standard." Id. "Waiver of arbitration is not a favored finding and there is a presumption against it." Hafer v. Vanderbilt Mortg. & Fin., Inc., 793 F. Supp. 2d 987, 1000 (S.D. Tex. 2011) (quoting Lawrence v. Comprehensive Bus. Servs. Co., 833 F.2d 1159, 1164

---

[1] The requirements under § 3 of the FAA are the same as the requirements to establish the first element under § 4 of the FAA.  Thus, if the requirements for the first element under § 4 are met, the requirements to obtain a stay of litigation pursuant to § 3 have also been met.

(5th Cir. 1987)).  Consequently, the party alleging waiver of arbitration carries a heavy burden of proof.  Ryan, 2011 WL 2680482, at *2.

## DISCUSSION

Plaintiff argues that the Court should compel this case to arbitration because (1) the parties agreed to arbitrate, and (2) no federal statute or policy specifically renders Plaintiff's claims nonarbitrable.  (Dkt. # 23.)  Defendant does not dispute Plaintiff's position, but argues that Plaintiff waived its right to arbitration by substantially invoking the judicial process to Defendant's prejudice.  (Dkt. # 28.)

As previously stated, parties agree to arbitrate when (1) a valid agreement to arbitrate between the parties exists, and (2) the dispute in question falls within the scope of an arbitration agreement.  Dealer Comp. Servs., 588 F.3d at 886 (citing Will-Drill Res., Inc., 352 F.3d at 214).  However, a motion to compel arbitration pursuant to § 4 should not be granted if the opposing party identifies a federal statute or policy that would render the claims nonarbitrable.  Anderson v. Waffle House, Inc., 920 F. Supp. 2d 685, 695 (E.D. La. 2013).  Additionally, a party may waive its right to arbitration if that party (1) substantially invokes the judicial process, and (2) that invocation results in prejudice to the opposing party. Republic Ins. Co., 383 F.3d at 346–47.

I.     Valid Agreement to Arbitrate

Plaintiff contends a valid agreement to arbitrate exists because it is undisputed that the Agreements each contained an arbitration clause. (Dkt # 23 at 6.) "[A] written arbitration agreement is prima facie valid and must be enforced unless the opposing party . . . alleges and proves . . . such grounds as exist at law or in equity for the revocation of the contract." Hafer, 793 F. Supp. 2d at 994 (quoting Freudensprung v. Offshore Technical Servs., Inc., 379 F.3d 327, 341 (5th Cir.2004) (editorial marks omitted); 9 U.S.C. § 2. Here, Defendant does not dispute the existence of a valid arbitration agreement. Having reviewed the Agreements, the Court finds that Plaintiff has met its burden of showing that a valid agreement to arbitrate exists.

II.    Scope of the Arbitration Agreement

With respect to the second step of the analysis, Plaintiff contends that the arbitration agreement extends to Plaintiff's causes of action against Defendant because the arbitration clause is broad. (Dkt. # 23 at 6.) To determine whether a dispute falls within the scope of an arbitration agreement, courts look the language of the agreement and decide whether the clause is "narrow" or "broad". See Pennzoil Exploration and Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1067 (5th Cir. 1998) (beginning the analysis of scope of an arbitration clause by distinguishing "narrow" arbitration clauses from "broad" arbitration clauses). A

7

"narrow" arbitration clause contains language such as "arising out of the contract," whereas a "broad" arbitration clause contains language such as "relate[d] to" or "connected with" the contract.  See id.  If the language is "narrow," arbitration must not be compelled unless the dispute "arises from the contract."  E.g., Complaint of Hornbeck, 981 F.2d at 754.  Conversely, if the clause is "broad," it embraces all disputes between the parties regardless of the label attached to the dispute.  See Pennzoil Exploration, 139 F.3d at 1067.

>Here, the relevant language of the dispute resolution clause states:

> Any controversy between [Plaintiff] and/or Affiliates…<u>arising from</u> or in <u>any way related</u> to this Agreement, [Defendant's] business relationship with [Plaintiff] and/or Affiliates, or the termination of [Defendant's] business relationship with [Plaintiff] and/or Affiliates shall be resolved exclusively by final and binding arbitration administered by the American Arbitration Association under its rules then applicable to the dispute.

(Dkt. #7, Exs. B–E) (emphasis added).  This provision contains both narrow ("[a]ny controversy between [Plaintiff] and/or Affiliates . . . <u>arising from</u> . . . this Agreement) and broad ("[a]ny controversy between [Plaintiff] and/or Affiliates . . . in <u>any way related</u> to this Agreement) language.  (Id.) (emphasis added).

The Supreme Court and the Fifth Circuit have described arbitration provisions with similar language as "broad" arbitration clauses.  See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 397–98 (1967) (labeling as

8

"broad" a clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement"); Pennzoil Exploration, 139 F.3d at 1067 (characterizing a provision that stated "[a]ny dispute, controversy or claim arising out of or in relation to or in connection with this Agreement" as broad and capable of embracing "all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute"); Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc., 138 F.3d 160, 164–65 (5th Cir. 1998) (holding that when parties agree to an arbitration clause governing "[a]ny dispute arising out of or in connection with or relating to this Agreement," they "intend the clause to reach all aspects of the relationship.").

Accordingly, the arbitration clause in the instant case is broad, embracing all disputes related to the parties' contractual relationship and encompassing all of Plaintiff's claims.  Because a valid arbitration agreement exists, and the arbitration clause encompasses all of Plaintiff's causes of action against Defendant, this Court finds that the requirements to stay litigation under § 3 of the FAA, and the requirements for the first element to compel arbitration under § 4 of the FAA (whether parties agreed to arbitrate), are satisfied.

III.     Federal Statute or Public Policy Precluding Arbitration; Waiver

As to the second element of § 4, Plaintiff contends that there is no discernable federal statute or policy that specifically precludes arbitration or

renders Plaintiff's claims nonarbitrable.  A motion to compel arbitration pursuant to § 4 should not be granted if the opposing party identifies a federal statute or policy that would render the claims nonarbitrable.  Waffle House, Inc., 920 F. Supp. 2d at 695.  Defendant has not pointed to any federal statute or policy that renders Plaintiff's claims nonarbitrable.  Instead, Defendant argues that Plaintiff's motion should be denied because Plaintiff waived its right to arbitration by substantially invoking the judicial process to Defendant's prejudice.  (Dkt. # 28.)

      A.    "Substantial Invocation" of the Judicial Process

Defendant argues that Plaintiff substantially invoked the judicial process when Plaintiff filed suit without asserting its right to arbitration.  (Id. at 4.)  In order to substantially invoke the judicial process, a party must have litigated the claim that the party now proposes to arbitrate by engaging in some overt act in court that demonstrates a desire to resolve the arbitrable dispute through litigation rather than arbitration.  Subway Equip. Leasing Corp. v. Forte, 169 F.3d 324, 328–29 (5th Cir. 1999).  The Fifth Circuit has explicitly held that a plaintiff's decision to file suit on otherwise arbitrable claims constitutes substantial invocation of the judicial process for those specific claims, unless a relevant exception applies. Nicholas, 565 F.3d at 908.

Cumulatively, Plaintiff's Original Petition and application for a TRO in Bexar County District Court on January 16, 2015 and its First Amended

Complaint on February 23, 2015 included the same claims that it now seeks to arbitrate. (Dkts. ##1, 7.) By filing suit for these claims and not asserting its right to arbitrate until approximately four months after it filed its Original Petition and application for a TRO, Plaintiff engaged in an overt act that demonstrated its intent to adjudicate these claims through litigation rather than arbitration. See Nicholas, 565 F.3d at 908.

Plaintiff states that it filed suit and application for a TRO in Bexar County District Court in order to gain immediate relief from Defendant's ongoing breach. (Dkt. # 23 at 4.) The Fifth Circuit has recognized that the application for a TRO may constitute an exception to the general rule that filing suit is a substantial invocation of the judicial process where the parties contract for the right to be able to file suit to preserve the status quo with an injunction without waiving the right to arbitrate. Nicholas, 565 F.3d at 908–09 (citing Joseph Chris Personnel Servs. v. Rossi, 249 F. App'x 988, 991 (5th Cir. 2007) (acknowledging that filing suit solely to obtain injunctive relief pending arbitration where both the state law and the party's contract permitted filing suit for this limited purpose was not a substantial invocation of the judicial process). The parties in this case did not contract for this right; therefore, this exception does not apply. Because Plaintiff's decision to file suit for the same claims that it seeks to arbitrate without asserting its right to arbitrate is an overt act that demonstrates a desire to resolve the arbitrable dispute

11

through litigation rather than through arbitration, the Court finds that Plaintiff has substantially invoked the judicial process.

      B.      <u>Prejudice as Result of Invocation</u>

Defendant also argues that he suffered prejudice by Plaintiff's substantial invocation of the judicial process for two reasons. (Dkt. # 28 at 7.) First, Defendant has already incurred expenses defending against Plaintiff's claims. (<u>Id</u>.) Second, Defendant will be required to re-litigate issues already decided by this Court.[2] (<u>Id</u>.) "For purposes of a waiver of an arbitration agreement, prejudice refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." <u>Subway</u>, 169 F.3d at 327 (internal quotations and citations omitted). In assessing prejudice, the Fifth Circuit looks to a variety of factors including: (1) the amount of pretrial activity related to arbitrable claims; (2) time and expense incurred by the party opposing arbitration in defending against litigation efforts of the party moving for arbitration; and (3) the moving party's failure to timely assert its right to arbitration. <u>See</u> <u>Republic</u>, 383 F.3d at 346.

---

[2] At the hearing, Plaintiff's counsel represented that should the Court compel arbitration, Plaintiff would not seek to arbitrate the dismissed claims. The Court thus does not agree that Defendant's legal position would be damaged by compelling this case to arbitration.

Defendant's argument that he suffered financial prejudice as a result of unnecessary litigation speaks to the first and second factors considered by the Fifth Circuit: the amount of pretrial activity related to arbitrable claims, and time and expense incurred by the party opposing arbitration in defending against litigation efforts of the moving party.  In support of this argument, Defendant asserts that he has incurred significant expenses of:

- Removing this case to federal court,
- Briefing its Motion to Dismiss Plaintiff's Original Petition,
- Briefing its Motion to Dismiss Plaintiff's Amended Complaint,
- Arguing its Motion to Dismiss Plaintiff's Amended Complaint, and
- Secondary and administrative tasks attendant to any lawsuit.

(Dkt # 28 at 7.)

"When one party reveals disinclination to resort to arbitration on any phase of suit involving all parties, those parties are prejudiced by being forced to bear the expenses of a trial [because] [a]rbiration is designed to avoid this very expense." Price v. Drexel Burnham Lambert, Inc., 791 F.2d 1156, 1159 (5th Cir. 1986).  When Plaintiff decided to file suit without asserting its right to arbitrate, Plaintiff revealed a disinclination to resort to arbitration.  See Miller Brewing Co., 781 F.2d at 497 (recognizing that plaintiff's decision to file suit without mentioning its desire to arbitrate was an indication of disinclination to arbitrate). Relying on this disinclination, Defendant engaged in pretrial activities, thereby incurring costs necessary to defend itself against Plaintiff's substantial invocation

13

of the judicial process. Had Plaintiff asserted its right to arbitrate at the onset of the case, Defendant would have had the opportunity to avoid the costs associated with removing the case to this Court and briefing and arguing its motion to dismiss and the instant motion. See e.g., Price, 791 F.2d at 1160 (recognizing that costs incurred in responding to a motion to dismiss would not have been incurred in preparation for arbitration).

With respect to the third factor, the moving party's failure to timely assert its right to arbitrate, the Fifth Circuit has not provided a precise rule as to how long a party may wait before asserting its right to arbitration. Indus. & Mech. Contractors, Inc. v. Polk Const. Corp., No. Civ. A. 14-513, 2014 WL 4983486, at *3 (E.D. La. Oct. 6, 2014). However, the Fifth Circuit has stated that "[t]he decision to arbitrate is one best made at the onset of the case." Walker v. J.C. Bradford & Co., 938 F.2d 575, 577 (5th Cir. 1991). "While delay in asserting the right to arbitrate will not alone result in waiver, such delay does bear on the question of prejudice, and may, along with other considerations, require a court to conclude that waiver has occurred." Price, 791 F.2d at 1161 (internal quotation marks omitted).

Here, Plaintiff pursued its claims in this Court for four months. Then, upon receipt of an adverse ruling by this Court (Dkt # 20), Plaintiff asserted its right to arbitrate for the first time. (Dkt # 23.) It is not disputed that Plaintiff was

aware of its right to compel arbitration at the beginning of this litigation as evidenced by his signature on the fully executed copies of the Agreements and initials provided at the bottom of each page of the 2012 and 2014 Agreements. (Dkt. #7; Exs. B–E.)  In light of the financial prejudice that Defendant suffered from engaging in pretrial activity necessary to defend itself against Plaintiff's claims, combined with Plaintiff's delay in asserting its right to arbitrate when it was aware of its right to compel arbitration at the onset of this case, this Court agrees that Defendant has been prejudiced by Plaintiff's substantial invocation of the judicial process.

In sum, while the Court agrees that the requirements to stay litigation and compel arbitration pursuant to §§ 3–4 of the FAA have been met, the Court finds that Plaintiff has waived its right to arbitration through substantial invocation of the judicial process to Defendant's prejudice.

## CONCLUSION

For the reasons stated above, the Court hereby **DENIES** Plaintiff's Motion to Stay Litigation and Compel Arbitration.  (Dkt. # 23.)

**IT IS SO ORDERED.**

DATED: San Antonio, Texas, July 1, 2015.

_____
David Alan Ezra
Senior United States Distict Judge